UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SARAH B., )<br>)<br>       *Plaintiff*     )<br>)<br>v.                              )<br>)<br>ANDREW M. SAUL,     )<br>*Commissioner of Social Security*,[1]  )<br>)<br>       *Defendant*    )  | No. 2:19-cv-00267-LEW |

### *AMENDED REPORT AND RECOMMENDED DECISION*[2]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the basis that the ALJ's mental residual functional capacity ("RFC") determination is unsupported by substantial evidence because the ALJ (i) did not adequately account for the plaintiff's moderate limitations in concentration, persistence, and pace or social functioning, (ii) gave undue weight to the opinion of agency nonexamining consultant Kirk Boyenga, Ph.D., and failed to explain why she did not adopt a portion of the opinion of treating psychologist Amy M. Fisch, Ph.D., and (iii) impermissibly interpreted raw medical evidence. *See* Plaintiff's Itemized Statement of Errors

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the defendant in this matter.

[2] This Amended Recommended Decision only amends the Notice on the last page. This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

("Statement of Errors") (ECF No. 11) at 5-14. I find no reversible error and, accordingly, recommend that the court affirm the decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2021, Finding 1, Record at 18; that she had the severe impairments of depression, bipolar disorder, a trauma and stressor related disorder, and a substance addiction disorder, Finding 3, *id.*; that she had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: she could perform simple, routine tasks, could never work with the public, could adapt to simple changes in the work routine and make basic work decisions, and she could only work where there was access to a bathroom, Finding 5, *id*. at 21; that, considering her age (42 years old, defined as a younger individual, on her alleged disability onset date, July 19, 2016), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 28; and that she, therefore, had not been disabled from July 19, 2016, her alleged onset date of disability, through the date of the decision, September 27, 2018, Finding 11, *id*. at 29. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion

drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Pertinent Findings of ALJ

The commissioner prescribes a psychiatric review technique that adjudicators must follow in assessing whether, at Step 2, a claimant has medically determinable mental impairments; if so, whether, at Steps 2 and 3, such impairments are severe and meet or equal a so-called Listing (a determination arrived at with the aid of a so-called Psychiatric Review Technique Form ("PRTF")); and, if one proceeds to Steps 4 and 5, the degree to which such impairments impact RFC (a so-called mental RFC assessment). *See* 20 C.F.R. § 404.1520a. At Step 2, the severity of the impairment is assessed on the basis of ratings of the degree of limitation in four broad functional areas: (i) understand, remember, or apply information, (ii) interact with others, (iii) concentrate, persist, or maintain pace, and (iv) adapt or manage oneself. *See id*. § 404.1520a(c).

"This court has indicated that mental RFC findings typically should reflect, and be consistent with, the degree of impairment found by way of use of a PRTF." *McHugh v. Astrue*, Civil No. 09-104-BW, 2009 WL 5218059, at *4 (D. Me. Dec. 30, 2009) (rec. dec. *aff'd* Jan. 20, 2010); *see also, e.g.*, *Leighton v. Astrue*, No. 07-142-B-W, 2008 WL 2593789, at *4 (D. Me. June 30, 2008) (rec. dec., *aff'd* July 22, 2008) (agreeing with claimant's contention "that the mental

3

limitations included in the [RFC] assigned by the [ALJ] do not include the moderate difficulties in maintaining social functioning and concentration, persistence or pace that he found to exist").

At Step 2, the ALJ determined that the plaintiff had moderate limitations in her abilities to concentrate, persist, or maintain pace and to interact with others, explaining:

> In interacting with others, the [plaintiff] has a moderate limitation. [She] stated she has anxiety being around people (Exhibit 4E, Testimony). However, she has consistently had support from her family and a good friend (Exhibit 1lF, page 4). In April 2017, [she] reported going out more and socializing more with people, even meeting up with people from her prior job and enrolling in a VFW chapter. The [plaintiff] continued to report supportive family ties with parents and cousins (Exhibit 12F, page 46). Despite her reluctance to be around others, she was planning to attend weekly tai chi classes (Exhibit lF, page 162). Since moving to Maine, the [plaintiff] socializes with her parents and has lunch with two friends she grew up with (Exhibit 7F, page 5, testimony). I have included a limitation to work with the public in deference to her reluctance to being around others. At the supplemental hearing, the [plaintiff] testified that she goes out to lunch with her mother and that she stays close to her family. She testified that [she] is tired and needs a nap after being out and about and around other people.
>
> With regard to concentrating, persisting, or maintaining pace, the [plaintiff] has a moderate limitation. [She] alleges difficulty with concentration (Exhibit 4E). She can pay attention for only 10-15 minutes at a time (Exhibit 4E, page 7). In May 2016, her counselor rated her concentration and attention as fair (Exhibit 1 lF, page 6). She reported problems with concentration saying it was hard, but reported liking going to the library (Exhibit 12F, page 46). In July 2016, Dr. Null, the [plaintiff]'s psychiatrist[,][3] noted the [plaintiff]'s focus and concentration were better with a changed medication (Exhibit lF, page 263). I have limited the [plaintiff] to simple, routine tasks with simple changes to address her concerns of reduced concentration.

Record at 20.

In making her RFC determination, the ALJ explained that she gave "greatest weight" to the June 27, 2017, opinion of Dr. Boyenga. Record at 26; *see also id.* at 118-23. Dr. Boyenga found that the plaintiff had some moderate limitations in sustained concentration, persistence, and maintenance of pace, social interaction, and adaptation, *see id.* at 121-22, and, in the narrative portion of his assessment, went on to translate those broad-brush findings into an RFC, explaining:

---

[3] This is an apparent reference to Megan Null, Psy.D.  *See* Record at 23.

> On examination [the plaintiff] is fully oriented and free of thought disorder or serious memory problem. She can also live alone, manage personal hygiene, prepare meals, drive a car, make purchases, attend meetings and secure substances of abuse. [She] is capable of performing simple tasks. Social skills are impaired, but allow settings with reduced interpersonal contact. [She] is able to retain friendships. Adaptation abilities are limited, but allow routine, repetitive tasks. [She] can follow instructions and leave home alone.

*Id*. at 123. This "summary paragraph[,]" as the plaintiff terms it, *see* Statement of Errors at 8, constituted Dr. Boyenga's RFC assessment, *see* Record at 123; *Swift v. Astrue*, Civil No. 08-280-B-W, 2009 WL 902067, at *3 (D. Me. Mar. 31, 2009) (rec. dec., *aff'd* Apr. 21, 2009) (noting that the narrative set forth in the commissioner's mental RFC form, rather than the checkboxes indicating moderate and other degrees of limitation, constitutes the "official RFC assessment").

The ALJ gave "greatest weight" to the Boyenga opinion, reasoning:

> He determined the [plaintiff]'s mental status was normal. He also noted the [plaintiff] demonstrated she could live alone, manage her personal hygiene, prepare meals, drive a car, make purchases, attend meetings and secure substances of abuse. He determined she was capable of performing simple tasks. Her social skills were impaired but allowed for settings with reduced interpersonal contact. She is able to retain friendships. He noted she would have moderate limits in adapting to changes in the work setting as well as interacting appropriately with the public. I find these recommendations reasonable and his overall opinion is supported by the medical evidence and the [plaintiff]'s activities of daily living. His opinion was offered less than a year ago and is consistent with the medical evidence since that time. I have added limits to working with the public and have limited her to simple work with simple changes, which should accommodate her reluctance to interact with groups of people and her complaints of limited concentration. These limitations should accommodate her remaining psychiatric symptoms, partially controlled with medication and counseling.

Record at 26-27.

The ALJ also accorded "great weight" to the May 18, 2017, opinion of Dr. Fisch and "some weight" to a February 14, 2018, psychological evaluation by agency examining consultant James Moran, Ed.D. Record at 26, 28; *see also id*. at 1176-82 (Dr. Fisch), 1037-45 (Dr. Moran). However, she gave "little weight" to a January 25, 2018, psychological evaluation by Joseph F.

Wojcik, Ph.D., conducted at the request of the plaintiff's representative, and accompanying February 8, 2018, opinion, and "little weight" to opinions of treating sources Greg Skillman, LCSW, and Alexander Raev, M.D., dated February 12, 2018, and July 25, 2018. *Id*. at 26-27; *see also id.* at 1027-36 (Wojcik evaluation and opinion), 1251-57 (Raev/Skillman opinions).

### B. Asserted Failure to Reflect Moderate Limitations in RFC Determination

The plaintiff first contends that the ALJ's mental RFC assessment fails "to account for [her] moderate limitations in concentrating, persisting, and maintaining pace[,]" Statement of Errors at 5, asserting that the ALJ's conclusions, which I construe to mean her determination that the plaintiff was limited to "simple, routine tasks with simple changes[,]" Record at 20, "are contrary to this court's holding that limitations to unskilled work and only occasional changes in the work setting do not reflect moderate restrictions in the broad category of concentration, persistence, or pace[,]" Statement of Errors at 9 (citing *Valari M. v. Soc. Sec. Admin. Comm'r*, 2:18-cv-00342-JDL, 2019 WL 4277783, at *5 (D. Me. Sept. 10, 2019); *McHugh*, 2009 WL 5218059, at *4).

However, as the commissioner rejoins, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 13) at 6, "[t]his court has repeatedly upheld limitations to simple, routine, and/or repetitive work when the claimant has been found to be moderately limited in the area of concentration, persistence, or pace[,]" *Boyce v. Colvin*, No. 1:13-cv-00381-JAW, 2014 WL 5473237, at *4 (D. Me. Oct. 27, 2014) (citing line of cases). As the commissioner notes, *see* Opposition at 6, "it is the absence of explication by the decision-maker of the reasoning leading from such moderate limitations[,] . . . rather than the fact that such a conclusion was drawn, that requires remand[,]" *Henderson v. Astrue*, No. 2:10-cv-122-GZS, 2011 WL 1130880, at *2 (D. Me. Mar. 25, 2011) (rec. dec. *aff'd* Apr. 12, 2011).

Yet, the plaintiff does not take issue with the *ALJ's* explanation, *see* Statement of Errors at 6-9, and I find no reason to disturb it. Here, to account for the moderate limitations she found in concentrating, persisting, or maintaining pace, the ALJ "limited the [plaintiff] to simple, routine tasks with simple changes to address her concerns of reduced concentration." Record at 20. She explained that these imitations adequately accounted for moderate limitations in concentration, persistence, or pace because "Dr. Null . . . noted the [plaintiff]'s focus and concentration were better with a changed medication[,]" *id*. at 20, "[t]here is no support in the record to indicate [the plaintiff] could not persist at a simple job[,]" *id*. at 26, Dr. Moran opined that "she would be able to maintain employment[,]" which the ALJ noted was "especially [true] with restrictions [the ALJ adopted of] limiting her to simple work . . . and only simple changes[,]" *id*., and Dr. Boyenga determined that "she was capable of performing simple tasks[,]" *id*.

The plaintiff challenges none of these findings, instead taking issue with Dr. Boyenga's explanation. *See* Statement of Errors at 6-9. Specifically, she contends that Dr. Boyenga provided "no support for the proposition that a limitation to simple, routine tasks adequately accounts for [the plaintiff]'s moderate limitations in concentration, persistence, or pace." *Id*. at 8-9. However, the authorities on which she relies for this proposition, in particular, *Valari M.* and *McHugh*, turn on whether the *ALJ* adequately explained his or her mental RFC determination, not whether the expert on whose opinion the ALJ relied did so. *See Valari M.*, 2019 WL 4277783, at *5 (assessing whether "the ALJ erred by failing to adequately account for the moderate limitations in concentrating, persisting, or maintaining pace that the ALJ identified at Step 3 when assessing Valari M.'s mental RFC"); *McHugh*, 2009 WL 5218059, at *4 (assessing whether "the [ALJ]'s finding, at the PRTF stage, of a moderate limitation in concentration, persistence, or pace is not reflected in his mental RFC determination").

In any event, the plaintiff's criticisms of Dr. Boyenga's explanations are not well-taken. The plaintiff first asserts that Dr. Boyenga's opinion cannot stand as substantial evidence in support of the ALJ's RFC assessment because Dr. Boyenga "failed to provide any sort of explanation for how a limitation to simple work addresses [the plaintiff's] ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis[.]" Statement of Errors at 8 (citation and internal quotation marks omitted). In support of that point, she cites Social Security Program Operations Manual System ("POMS") § DI 24510.006(C)(7), *see id.* at 7-8, which provides, in pertinent part:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) . . . . The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

POMS § DI 24510.006(C)(7). Yet, these requirements pertain to adjudicators such as ALJs, and the plaintiff cites no authority for the proposition that an agency nonexamining consultant must satisfy them. *See* Statement of Errors at 6-9.

The plaintiff next asserts that the ALJ's determination that she could "never work with the public" is "inconsistent with Dr. Boyenga's opinion that [she] [wa]s moderately limited in her ability to work with or in proximity to others without being distracted by them." *Id*. at 9. Accordingly, she contends, "[t]he ALJ's failure to explain why she adopted a less restrictive limitation . . . invalidates her reliance on Dr. Boyenga's opinion." *Id*. (citing *Henderson*, 2011 WL 1130880, at *3) ("Given this court's past focus on the need for an explanation of such conclusions by the [ALJ], and the minimal, conclusory explanation given in this case, I conclude that remand is warranted.")). Yet, Dr. Boyenga assessed a moderate limitation in the plaintiff's ability to work with or in proximity to others as a subset of his finding of an overall moderate

8

limitation in her ability to concentrate, persist, or maintain pace, not her ability to interact with others.  *See* Record at 121-22.

In any event, I find no inconsistency between Dr. Boyenga's PRTF findings and his mental RFC assessment as concerns the plaintiff's ability to interact with others.  As the commissioner observes, *see* Opposition at 8, Dr. Boyenga noted that the plaintiff was "[m]oderately limited" in her "ability to interact appropriately with the general public" but found "[n]o evidence of limitation" in her "ability to accept instructions and respond appropriately to criticism from supervisors" or her "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes[,]" Record at 122.  In the narrative portion of his assessment, Dr. Boyenga elaborated that the plaintiff could "manage personal hygiene," "attend meetings and secure substances of abuse[,]" and was "able to retain friendships."  *Id*. at 123.

Second, to the extent that the ALJ's assessment deviates from that of Dr. Boyenga, the ALJ adequately explained the deviation.  She noted that she had "included a limitation to work with the public in deference to [the plaintiff's] reluctance to being around others."  *Id*. at 20.  This, in turn, was consistent with the plaintiff's testimony at hearing that, for her, "being out with people, around people, it's exhausting because there's so much going on around me, and it almost makes my head spin[,]" *id*. at 55, indicating that she had difficulties with the public, but that, according to treating and examining sources, she had "good interpersonal skills" and was "involved in prosocial, healthy activities[,]" *id* at 1040 (Dr. Moran), "easily established rapport . . . and appeared cooperative," *id*. at 1180 (Dr. Fisch), "actively engaged" in group therapy and "readily participated in the group discussions[,]" *id*. at 2243 (LCSW Skillman), and reported that "she always got along well with her coworkers and superiors[,]" *id*. at 1038 (Dr. Moran); *see also id*. at 2237 (I "'get along well with most people'").  Moreover, the ALJ found that the plaintiff "did not indicate she was unable

9

to get along with co-worker[s] or supervisors[,]" *id.* at 26, and "reported increasing her socialization with friends, past co-workers and joining a VFW chapter[,]" *id.* at 22.

Remand, accordingly, is unwarranted on the basis of this point of error.

### C. Asserted Errors in Weighing Opinion Evidence

#### 1. Boyenga Opinion

The plaintiff next takes issue with the ALJ's assignment of great weight to the Boyenga opinion, which she contends was "based on an incomplete review of the record." Statement of Errors at 9. Specifically, she notes that "an additional 1,433 pages of medical records were added to the file" subsequent to Dr. Boyenga's review, arguing that, "[c]ontrary to the ALJ's conclusory statement[,]" these subsequent medical records were "not consistent with [Dr. Boyenga's] opinion." *Id.* at 10; *see* Record at 27.

As plaintiff's counsel noted at oral argument, "the amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert." *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) (citations and internal quotation marks omitted). "In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule." *Id.* (citations omitted). "[T]here is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC." *Patrick M. v. Saul*, Docket No. 1:18-cv-497-NT, 2019 WL 3997260, at *3 (D. Me. Aug. 23, 2019) (citation and internal quotation marks omitted). "However, courts in this Circuit have found that an ALJ may rely on a non-examining expert's opinion that is based on older records if the older evidence remains accurate, including where (1) there are not direct contradictions between the reports, such that the newer evidence is

10

essentially cumulative of the older evidence, or (2) the newer reports show some measure of improvement in the claimant's condition." *Id.* (citations and internal quotation marks omitted).

Of the "1,433 pages of medical records" that were "added to the file[,]" the plaintiff cites only five pages in support of her argument that remand is warranted on this basis:

> (a) an opinion from consultative examiner Joseph Wojcik, Ph.D., assessing marked limitations in the ability to (1) keep social interactions free of excessive irritability, sensitivity, argumentativeness or suspiciousness, (2) sustain an ordinary routine and regular attendance at work, (3) work a full day without needing more than the allotted number or length of rest periods during the day, and (4) managing psychologically-based symptoms (R. 1034-35); (b) an opinion from treating sources Greg Skillman, LCSW, and Alexander Raev, M.D., assessing marked limitations (1) asking for help when needed, (2) handling conflicts with others, (3) working at an appropriate and consistent pace, (4) responding to demands, (5) managing psychologically-based symptoms, and (6) being aware of normal hazards and taking appropriate precautions (R. 1255-56); and (c) a Disability Benefits Questionnaire completed by Amy Fisch, Ph.D., noting occupational and social impairment with reduced reliability and productivity. (R. 1178).

Statement of Errors at 10.

While, as the commissioner concedes, the Wojcik, Skillman, and Raev opinions are indeed "inconsistent with Dr. Boyenga's opinion[,]" Opposition at 11-12, the ALJ rejected each of those opinions as inconsistent with the record as a whole and with those experts' own findings or treatment notes, all of which reflected largely normal mental status examinations, *see* Record at 26 (giving Wojcik opinion "little weight" because the limitations he assessed "were not noted in [the plaintiff's] multiple mental status examinations in the record[,]" and he did not indicate that he considered the plaintiff's substance abuse during the relevant time in assessing her limitations), *id.* at 27 (giving the Raev and Skillman opinions "little weight" as they "summarize[d] the [plaintiff]'s subjective allegations of her psychiatric symptoms" without "any objective clinical findings to support their opinion[s]," which were "inconsistent with the [plaintiff]'s activities of

11

daily living . . . and her treating psychiatric records, which contain evidence of normal and mostly normal mental status examinations").

The plaintiff does not separately challenge the ALJ's rejection of the Wojcik, Skillman, and Raev opinions, *see* Statement of Errors at 9-14, an omission that is fatal to her bid for remand on the basis that those opinions were unseen by Dr. Boyenga, *see, e.g.*, *Smith v. Berryhill*, No. 1:16-cv-00567-JHR, 2018 WL 1474528, at *6 (D. Me. Mar. 26, 2018) ("[A]n opinion of an agency nonexamining consultant who did not have the benefit of review of a treating source's later-submitted opinion may yet serve as substantial evidence of a claimant's RFC when the ALJ supportably rejects that treating source's opinion.") (citation omitted). While the plaintiff does challenge the ALJ's handling of the Fisch opinion, that challenge falls short for the reasons discussed below. The plaintiff, accordingly, fails to demonstrate that the ALJ erred in according the Boyenga opinion great weight.

## 2. Fisch Opinion

The plaintiff next faults the ALJ for giving "great weight to Dr. Fisch's opinion that [the plaintiff]'s major depressive disorder is moderate in severity" but failing "to discuss the balance of Dr. Fisch's opinion . . .[:] that [the plaintiff] has occupational and social impairment *with reduced reliability and productivity*." Statement of Errors at 11 (citing Record at 1178) (emphasis added by plaintiff). She contends that, because the ALJ did not "explain[] why she disregarded the portions of Dr. Fisch's opinion that were favorable to [the plaintiff]'s claim for disability[,] . . . Dr. Fisch's opinion is not substantial evidence in support of the ALJ's decision." *Id*. at 11-12 (citing *Parker v. Colvin*, No. 1:15-cv-00446-JHR, 2016 WL 4994997, at *7 (D. Me. Sept. 19, 2016)).

In *Parker*, the ALJ determined that the claimant retained the RFC to perform "simple work at all exertional levels involving no public interactions[,]" according "significant weight" to the

12

opinion of an agency nonexamining consultant, Brian Stahl, Ph.D.  *Parker*, 2016 WL 4994997, at *1, 4.  The claimant contended that the ALJ's reliance on the Stahl opinion was misplaced because the ALJ failed to recognize, let alone explain, the omission of Dr. Stahl's finding in his narrative RFC assessment that the plaintiff "'would do better in employment that limited interactions[.]'" *Id*. at *6.  This court concluded that because "the statement implied that the [claimant] would experience some level of difficulty in interacting with others besides members of the public, with whom Dr. Stahl already had found that she could not interact[,]" remand was warranted.  *Id*. at *6-7 (further noting that the ALJ was not free to ignore a portion of Dr. Stahl's RFC "assessment recorded in [his] narrative discussion" even if it was vague).

The same is not true here.  Dr. Fisch's finding that the plaintiff had "[o]ccupational and social impairment with reduced reliability and productivity[,]" Record at 1178, did not imply that she had limitations different in kind or degree from those found by Dr. Boyenga and assessed by the ALJ.  As the commissioner observes, *see* Opposition at 15, Dr. Fisch did not quantify or otherwise explain the degree of reduced reliability and productivity she assessed, *see* Record at 1176-82.  The ALJ acknowledged as much, noting at hearing that there was "an opinion in the record that the [plaintiff] . . . ha[d] occupational and social impairment with reduced reliability and productivity" that was not "quantified in terms of degree of off task behavior."  *Id*. at 60.  While, in response to a query by the ALJ concerning "the threshold for off task behavior[,]" a vocational expert present at the plaintiff's hearing testified that "when work is simple and repetitive, I find that anything more than three percent off task would not be tolerated[,]" *id*. at 60-61, it is not clear whether Dr. Fisch meant to indicate that the plaintiff would be off task more than 3 percent of the time.  Accordingly, the plaintiff fails to demonstrate that any error by the ALJ in failing to address that portion of the Fisch opinion is harmful.

### D. Asserted Error in Interpreting Raw Medical Evidence

The plaintiff, finally, attacks the ALJ's RFC determination as relying on her own impermissible lay assessment of the medical evidence. *See* Statement of Errors at 12-14. However, she fails to describe the evidence the ALJ assertedly impermissibly interpreted, thereby waiving the point. *See*, *e.g.*, *Graham v. United States*, 753 F. Supp. 994, 1000 (D. Me. 1990) ("It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived." (citation and internal quotation marks omitted)).

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 23rd day of April, 2020.

/s/ John H. Rich III  
John H. Rich III  
United States Magistrate Judge